UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIELA ALEXANDRIA CARRASCAL-OMEARA,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

Case No. C26-1476-MLP

ORDER

Petitioner Daniela Alexandria Carrascal-Omeara, through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (dkt. # 1), supported by her declaration (dkt. # 3) and the declaration of her counsel, Peyton Jacobsen (dkt. # 2).[1] Petitioner challenges as unlawful her redetention by the United States Immigration and Customs Enforcement ("ICE") at the

---

[1] A habeas petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Local Civil Rule 100(e) instructs that, if a petition is not verified by the party in custody, "the person making such petition or motion shall verify the same on behalf of such party in custody, and shall set forth therein the reason why it is not made and verified by the party in custody, and shall state he or she knows the facts set forth therein, or if upon information and belief, the sources of his or her information shall be stated." Local Rules W.D. Wash. LCR 100(e). The instant petition does not contain a verification. (*See* dkt. # 1.) Respondents do not challenge the petition as unverified or otherwise dispute any of the factual allegations contained in the petition or the accompanying sworn declaration filed in support by Petitioner. (*See* dkt # 9.) Because the operative facts are presented in Petitioner's sworn declaration, the Court accepts the petition. Counsel are advised to strictly adhere to all requirements of LCR 100(e) in future.

ORDER - 1

Northwest ICE Processing Center ("NWIPC"). Respondents filed a return (dkt. # 8), supported by the declarations of ICE Deportation Officer Paul Correa (dkt. # 9) and Respondents' counsel, Jennifer Wong (dkt. # 10). Petitioner filed a traverse (dkt. # 11), supported by a second declaration from her counsel (dkt. # 12). Having considered the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[2]

### I.    BACKGROUND

On August 7, 2022, Petitioner, a citizen of Colombia, entered the United States with her husband and young son to seek asylum. (Carrascal-Omeara Decl., ¶¶ 2, 5.) She was detained and issued a Notice to Appear ("NTA") and was released the next day on an Order of Release on Recognizance ("OREC"). (*Id.*, ¶ 7; Correa Decl., ¶¶ 3-6; Wong Decl., Exs. 2-3.) The OREC provided for release "[i]n accordance with section 236 of the Immigration and Nationality Act" ("INA"), codified at 8 U.S.C. § 1226. (Wong Decl., Ex. 3 at 2.) It required Petitioner to enroll in Alternatives to Detention ("ATD") and imposed a condition that Petitioner "not violate any local, State or Federal laws or ordinances." (*Id.*)

Petitioner moved to Las Vegas, Nevada, where she lives with her mother, stepfather, and son, who attends kindergarten. (Carrascal-Omeara Decl., ¶¶ 8, 11.) She established a community there, filed an asylum application, obtained a work permit, and worked full time. (*Id.*, ¶¶ 9, 12.)

On March 5, 2026, Petitioner was arrested by the Las Vegas Metropolitan Police Department on a domestic battery charge. (Carrascal-Omeara Decl., ¶ 15; Correa Decl., ¶ 11.) After being held for a few hours, she was released upon posting bail and was then detained by ICE on March 6, 2026. (Carrascal-Omeara Decl., ¶ 16; Correa Decl., ¶ 12.) ICE records show that Petitioner was detained "[d]ue to [her] recent criminal arrest[.]" (Wong Decl., Ex. 1 at 4.)

---

[2] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 6.)

ORDER - 2

On March 19, 2026, an immigration judge denied Petitioner's request for custody redetermination based on lack of jurisdiction, finding that Petitioner was detained pursuant to 8 U.S.C. § 1225. (Correa Decl., ¶ 13; Wong Decl., Ex. 4.) On March 24, 2026, Petitioner was transferred to NWIPC. (Carrascal-Omeara Decl., ¶ 18.)

On April 30, 2026, Petitioner filed the instant petition. (Dkt. # 1.) Prosecution of the domestic battery charge was declined on that same date, and Petitioner's bond was exonerated on May 4, 2026. (Second Jacobsen Decl., ¶ 3, Ex. F.) On May 14, 2026, ICE issued a cancellation of Petitioner's OREC based on "violation of a condition . . . , specifically 'You must not violate any local, State or Federal laws or ordinances'." (Wong Decl., Ex. 5.)

## II.   DISCUSSION

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that she is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### A.   Detention Authority

Detention of noncitizens is governed by §§ 235-36 of the INA, codified at 8 U.S.C. §§ 1225-26. In *Jennings*, the Supreme Court drew a clear line between the two provisions: § 1225 "applies primarily to [noncitizens] seeking entry into the United States," while § 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Section 1226(a) provides the "default rule" allowing discretionary detention of noncitizens "already present in the United States," with enumerated

exceptions (*see* § 1226(c)). *Id.* at 303. The Ninth Circuit has also described § 1226 as "provid[ing] the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Section 1225 applies to an "applicant for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Generally, applicants for admission who are "seeking admission . . . shall be detained" pending removal proceedings unless they are "clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A); *cf.* 8 U.S.C. § 1225(b)(1) (procedures for expedited removal).

Relying on out of circuit authority, Respondents argue that because Petitioner is an "applicant for admission" she is, therefore, "seeking admission," making detention mandatory. (Dkt. # 8 at 5-6 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026)).) Like other courts in this district and throughout the country, this Court rejects Respondents' arguments conflating these two phrases. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025) (applying statutory canons to determine that § 1225 does not apply to noncitizens not inspected on arrival but later apprehended); *Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (applying reasoning in *Rodriguez* to hold that § 1225 does not apply to noncitizens—like Petitioner here—apprehended upon arrival, released, and later apprehended again).

Although the ordinary meaning of the two phrases is similar, "applicant for admission" is statutorily defined differently from its ordinary meaning, while "seeking admission" is not statutorily defined and thus retains its ordinary meaning. *See Chacon v. Wilkinson*, 988 F.3d

ORDER - 4

1131, 1134 (9th Cir. 2021) ("When Congress does not define a term, [courts] 'interpret the words consistent with their ordinary meaning at the time Congress enacted the statute.'" (quoting *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018))). "It is precisely because Congress employed a statutory term of art for 'applicant for admission' but not for 'seeking admission'" that the terms cannot be equated. *Barbosa da Cunha v. Freden*, 2026 WL 1146044, at *7 (2d Cir. Apr. 28, 2026)); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (rejecting argument that an "applicant for admission" and a noncitizen "seeking admission" are synonymous); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 2026 WL 1243395, at *9 (11th Cir. May 6, 2026) (same).

Moreover, Respondents' own records support the conclusion that Petitioner is not detained pursuant to authority under § 1225. Applicants for admission subject to mandatory detention under § 1225(b) may be released only on parole "for urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). *See Jennings*, 583 U.S. at 287. Here, Petitioner was not paroled under § 1182. She was released on an OREC that specifically cited the authority of § 1226 (Wong Decl., Ex. 3 at 2). *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). "[W]here a petitioner has been treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225, the former is more likely to apply." *Del Valle Castillo*, 2025 WL 3524932, at *5 (internal citation and quotation marks omitted).

The Court therefore concludes that Petitioner's detention is governed by § 1226(a)'s discretionary detention framework. In any event, even if § 1225 were applicable here, "statutory

ORDER - 5

authority to detain does not obviate Respondents' obligation to comply with due process."

*Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026).

**B.      Redetention**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz*, 53 F.4th at 1206-07; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

### 1.      Private Interest

Petitioner's interest in remaining free from physical confinement after nearly four years of release—during which she was able to parent her child, obtain employment authorization and work full time, and build relationships with family and the community—is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Respondents acknowledge this significant liberty interest. (*See* dkt. # 8 at 7.) The first *Mathews* factor weighs in Petitioner's favor.

### 2.      Risk of Erroneous Deprivation

The risk of erroneous deprivation is significant where, as here, the only articulated basis for redetention is Respondents' application of § 1225(b) and a domestic battery charge that was

ORDER - 6

later declined for prosecution.[3] Respondents argue redetention was warranted because Petitioner violated the terms of release by being arrested for domestic battery. (Dkt. # 8 at 7-8.) The Court does not adjudicate the truth of the allegation against Petitioner, but there are fundamental differences between an arrest and a criminal conviction, as demonstrated by the prosecutor's later decision not to pursue charges.

The record does not show that ICE informed Petitioner of the alleged basis for redetention, afforded her an opportunity to explain or rebut the charge, or provided any hearing at which she could contest the factual predicate for redetention. There is no indication that ICE attempted to verify the allegation or that it would consider releasing Petitioner if the allegation proved unfounded, as the prosecutor's later decision suggests. The second *Mathews* factor therefore weighs in Petitioner's favor.

### 3.    *Governmental Interest*

Although the government has legitimate interests in enforcing the immigration laws and ensuring appearance at proceedings, Respondents identify no concrete way in which providing a short, pre-deprivation custody hearing before redetention would materially impede those interests. They assert only that a pre-detention hearing "when a person violates conditions of release" would "inhibit" immigration enforcement. (Dkt. # 8 at 8.) This argument sidesteps the threshold question of whether Petitioner in fact violated the conditions of release, particularly given the later prosecutorial decision not to prosecute.

Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings

---

[3] While Officer Correa stated in his declaration that Petitioner "missed an in-person check-in" on October 18, 2024, and on March 3, 2026, these alleged ATD violations were not cited as a basis for redetention and Petitioner denies them. (*See* Correa Decl., ¶¶ 8-9; Wong Decl., Ex. 5; Carrascal-Omeara Decl., ¶ 10.)

ORDER - 7

modest relative to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). "[A]bsent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process," particularly where the noncitizen has previously been released on her own recognizance. *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). On this record, Respondents identify no urgent concerns of flight risk or dangerousness that would make pre-deprivation process impracticable.

In sum, the *Mathews* factors favor Petitioner. Having determined that Petitioner was redetained without constitutionally required process, the Court next addresses the appropriate remedy for her unlawful confinement.

Other courts in this district have ordered post-deprivation hearings where exigent circumstances made pre-deprivation process impracticable. *See Quinonez Torres v. Hermosillo*, 2026 WL 547591, at *6 (W.D. Wash. Feb. 23, 2026) (citing *Martinez Hernandez v. Andrews*, 2025 WL 2495767, at *11 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (noting there may be "special case[s]" where a pre-deprivation hearing is not realistic))); *see also*, *e.g.*, *Balwan v. Bondi*, 2026 WL 497098, at *8 (W.D. Wash. Feb. 23, 2026) (ordering bond hearing and collecting cases following the same approach). However, "absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process[.]" *Guillermo M. R.*, 791 F. Supp. 3d at 1036; *see also E.A. T.-B.*, 795 F. Supp. 3d at 1323-24.

Petitioner requests immediate release from custody, citing *E.A. T.-B.*, where the evidence suggested that ATD violations were a pretext for redetention. (Dkt. # 11 at 13-14 (citing 795 F. Supp. 3d at 1324).) There is no evidence that her domestic battery charge was a mere pretext,

ORDER - 8

however. As in *Martinez Hernandez*, "it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated [her] flight." 2025 WL 2495767, at *12. Now that the charge has been dropped, however, standing alone it does not provide a reason for continued custody.

As the *Mathews* factors weigh in Petitioner's favor, the Court holds that, under the circumstances presented here, a prompt post-deprivation hearing would be consistent with due process. *See Balwan*, 2026 WL 497098, at *8-10. "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741-42 (9th Cir. 2008)). After issuing a conditional writ, a district court retains jurisdiction to ensure compliance with the writ and may order unconditional release if the government fails to comply with the initial habeas order. *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020).

A new hearing must be held within seven calendar days of this Order's filing date, *see*, *e.g.*, *Tabares Reyes v. Hernandez*, 2026 WL 820481, at *6 (W.D. Wash. Mar. 25, 2026); *Singh Sandhu v. Noem*, 2026 WL 607701, at *3 (W.D. Wash. Mar. 4, 2026); *Quinonez Torres*, 2026 WL 547591, at *6-10; *Reyes v. Hermosillo*, 2026 WL 507678, at *3 (W.D. Wash. Feb. 24, 2026), and Respondents are enjoined from denying bond to Petitioner on the basis that she is detained pursuant to 8 U.S.C. § 1225(b)(2). *See Balwan*, 2026 WL 497098, at *10. At the hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. *Id.* at *5 (noting that clear and convincing evidence standard was appropriate when fashioning a remedy, even if such a standard were not

required "as a general matter" for all noncitizens redetained following release); *Singh v. Noem*, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026) (noting circuit split on evidentiary standard for post-deprivation bond hearings and concluding it was "reasonable" to impose clear and convincing evidence standard to remedy due process violation).

### C.   Permanent Injunction

Petitioner also seeks a permanent injunction barring any future redetention without prior notice and a hearing at which the government must prove, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no alternatives would mitigate those risks. (Dkt. # 1 at 15.) A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026).

Petitioner points to several habeas cases demonstrating that, since at least June 2025, courts in this district have found redetention violated many noncitizens' due process rights. (*See* dkt. # 11 at 12-13.) Petitioner does not, however, identify any noncitizens who have been redetained after being granted relief, or provide any reason why she in particular would be likely to be redetained in future. Although the record shows that Petitioner was redetained without constitutionally adequate post-deprivation process, it does not establish a specific, real, and immediate threat that she will again be detained without applicable due process. Her request for permanent injunctive relief is therefore denied.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)   Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

ORDER - 10

(a)  Respondents shall provide Petitioner with a bond hearing before an immigration judge **within seven (7) days** of this Order, at which the government bears the burden of proof, by clear and convincing evidence, that Petitioner is a danger to the community or poses a risk of flight. *See Balwan*, 2026 WL 497098, at *8-10. At the bond hearing, Respondents are enjoined from denying bond on the ground that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2).

(b)  If a bond hearing is not provided **within seven (7) days** of the date of this Order, Respondents shall immediately release Petitioner from ICE custody on the terms of her most recent release.

(2)  Petitioner's request for permanent injunctive relief is DENIED without prejudice.

(3)  The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 27th day of May, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 11